UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
DIEGO B. FERNANDEZ,

                Plaintiff,            **OPINION AND ORDER**

    -against-                         16 Civ. 2533 (JCM)

PHILADEPHIA INDEMNITY INSURANCE
COMPANY,

                Defendant.
------------------------------------------------------X

Plaintiff Diego Fernandez ("Plaintiff") commenced this action as a result of an automobile insurance coverage dispute with the Defendant Philadelphia Indemnity Insurance Company ("Defendant" or "PIIC").[1] (Docket No. 3). Before the Court is Defendant's Motion for Summary Judgment ("Defendant's Motion") and Plaintiff's Cross-Motion for Summary Judgment ("Plaintiff's Cross-Motion"). (Docket Nos. 36, 46).[2] For the reasons that follow, Defendant's Motion is granted and Plaintiff's Cross-Motion is denied.

## I. BACKGROUND

The following facts are gathered from each party's statement filed pursuant to Rule 56.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Rule 56.1"),[3] each party's supporting affidavits and exhibits, and the pleadings submitted by the parties in support of their contentions.

---

[1] This action is before the undersigned for all purposes on consent of the parties, pursuant to 28 U.S.C. § 636(c). (Docket No. 24).

[2] The parties' briefs and supporting papers are hereinafter referred to as "Def. Br.," "Pl. Br. and Opp.," and "Def. Reply and Opp," respectively. (Docket Nos. 38, 49, 42). Plaintiff did not file a reply in further support of his Cross-Motion. All page number citations refer to the page number assigned upon electronic filing.

[3] The parties' Rule 56.1 statements are hereinafter referred to as "Def. Statement," "Pl. Counterstatement," and "Def. Counterstatement," respectively. (Docket Nos. 38-1, 50, 45). Where facts stated in a party's Rule 56.1 statement are supported by testimonial or documentary evidence and denied by only a conclusory statement by the other party without citation to conflicting testimonial or documentary evidence, the Court deems such facts true. See

## A. The Policy

In June of 2012, Plaintiff purchased a 1962 Chevrolet Impala (the "Impala" or the "insured vehicle").[4] (Pl. Counterstatement at ¶ 7; Def. Counterstatement at ¶ 7). Shortly thereafter, Plaintiff applied to add the Impala to an existing auto insurance policy issued by PIIC. (Def. Counterstatement at ¶ 7). PIIC agreed to insure the Impala for an agreed value of $120,000 for the period of June 18, 2012 to November 20, 2012. (*Id.*). Subsequently, PIIC issued Policy No. GD20063864-04 (the "Policy"), insuring the Impala for an agreed value of $125,000 for the period of November 20, 2013 to November 20, 2014. (Docket No. 37-6). In November of 2013, PIIC increased the agreed value of the Impala to $165,000 upon Plaintiff's request. (Docket No. 37-7).[5]

Among the Policy's many provisions, two are particularly relevant to this case: the Fraud Provision and the Cooperation Condition. Pursuant to the Fraud Provision, the Policy does not "provide coverage for any 'insured' who has made fraudulent statements or engaged in

---

S.D.N.Y. Local Rule 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed admitted for purposes of the motion unless specifically controverted . . ."); S.D.N.Y. Local Rule 56.1(d) ("Each statement by the movant or opponent . . . controverting any statement of material fact[ ] must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c).").

The parties' counterstatements of facts mark certain statements as "disputed" but do not identify any actual factual inconsistency. Where these counterstatements do not identify a true factual dispute, the Court treats the statement as undisputed. *See Martin v. Sprint United Mgmt. Co.*, No. 15 Civ. 5237 (PAE), 2017 WL 4326109, at *1 n.1 (S.D.N.Y. Sept. 27, 2017).

[4] Seven years prior to purchasing the Impala, Plaintiff filed for bankruptcy to discharge a total of $32,077 of debts. (Pl. Counterstatement at ¶ 1; Docket No. 37-2 at 10). His petition was granted in March of 2006. (Pl. Counterstatement at ¶ 2). In 2009, Plaintiff purchased a 1985 Pontiac Fiero for $40,000, which PIIC insured. (Docket No. 37-4 at 2; Def. Statement at ¶ 3). In December of 2010, Plaintiff filed an Automobile Loss Notice with PIIC alleging that his Fiero was stolen while parked at home in an enclosed parking space. (Def. Statement at ¶ 3). PIIC paid Plaintiff $40,000 in connection with the alleged theft. (*Id.* at ¶ 6).

[5] Plaintiff submitted photographs that purportedly demonstrate renovations and improvements to the insured vehicle. (Def. Counterstatement at ¶ 8; Pl. Counterstatement at ¶ 8). Defendant asserts that during the course of the instant investigation and ensuing litigation, PIIC uncovered that the renovations were "fictitious." (Def. Counterstatement at ¶ 8). Although this fact is in dispute, it is immaterial to this decision as this decision does not reach the issue of whether Plaintiff made misrepresentations in his *application* for the Policy. (*See* Def. Br. at 10) ("PIIC's motion involves insurance fraud with regard to a *claim*, rather than an insurance application.").

fraudulent conduct in connection with any accident or loss for which coverage is sought under this policy." (Docket No. 37-6 at 16). Under the Cooperation Condition, PIIC has no duty to provide coverage under the Policy "if the failure to comply with [the duty to cooperate] is prejudicial" to PIIC. (*Id.*).

## B. The Alleged Theft and Subsequent Investigation

On July 1, 2014 at 10:57 A.M., Plaintiff reported that his Impala was stolen while parked inside of his garage and told PIIC that the police were "on their way." (Def. Statement at ¶ 9; Def. Counterstatement at ¶ 9; Docket No. 37-8). At 10:59 A.M., Plaintiff called the police to report the theft. (Def. Statement at ¶ 11; Def. Counterstatement at ¶ 11; Docket No. 37-12 at 4). Plaintiff told the police that he purchased the Impala in 2007 for $30,000. (Def. Statement at ¶ 12; Pl. Counterstatement at ¶ 12). Plaintiff later confirmed the purchase date and price in his recorded statement, (Def. Statement at ¶ 13; Pl. Counterstatement at ¶ 13), and the affidavit of vehicle theft he provided to PIIC. (Def. Statement at ¶ 14; Pl. Counterstatement at ¶ 14).

On July 29, 2014, PIIC requested information from Plaintiff in connection with the alleged theft, including documents pertaining to the purchase of the Impala and its subsequent upgrades. (Def. Statement ¶ 15; Docket No. 37-11). PIIC also requested Plaintiff's personal and business tax returns dating back to January 1, 2009. (Docket No. 37-11). On August 11, 2014, Plaintiff provided PIIC with a police report and the first page of the 2013 tax return for his business. (Docket No. 37-12). On August 25, 2014, PIIC requested the remaining documents from Plaintiff and informed him that his failure to produce the documents would be a material breach of the insurance policy. (Docket No. 37-13). When PIIC did not hear from Plaintiff, PIIC sent another demand for the documents on October 2, 2014. (Docket No. 37-14).

On October 6, 2014, Plaintiff provided the following documents to PIIC: (i) a November 20, 2007 bill of sale signed by "Shayne Alterton," which acknowledged receipt of $30,000 in cash for the sale of the Impala; (ii) a September 7, 2009 invoice issued by Golden Customs, Inc., which indicated that Plaintiff paid $151,750 in cash to upgrade the Impala; and (iii) an October 5, 2013 invoice issued by Golden Customs indicating that Plaintiff paid $71,500 in cash for additional upgrades. (Def. Statement at ¶ 19; Docket No. 37-15). Plaintiff objected to PIIC's requests for his tax returns, however. (Def. Statement at ¶ 20; Docket No. 37-15 at 12–13). Thus, on October 15, 2014, PIIC again demanded that Plaintiff comply with the July 29, 2014 document requests. (Docket No. 37-16). When no response was provided, PIIC sent another demand on October 30, 2014. (Docket No. 37-17). On December 17, 2014, PIIC informed Plaintiff that it would not process his claim if he continued to refuse to comply with all previous requests. (Docket No. 37-19). PIIC never received a response to their December 17 letter. (Def. Statement at ¶ 24).

## C. The Procedural History

On February 22, 2016, Plaintiff filed suit against PIIC in New York State Supreme Court, Orange County, alleging that PIIC breached its contract by failing to pay Plaintiff $165,000 after the theft of his insured vehicle. (Docket No. 37-19). The action was removed to this Court on April 6, 2016. (Docket No. 37-20). In Plaintiff's initial disclosure, he again produced the three documents he submitted to PIIC during the investigation: the bill of sale and two invoices from Golden Customs. (Docket No. 37-21). Plaintiff objected to PIIC's requests for his tax returns and documents pertaining to the Impala's upgrades on the grounds that the information sought was neither relevant nor material. (Def. Statement at ¶¶ 29–30; Pl. Counterstatement at ¶ 30).

In October of 2016, PIIC's investigators obtained title documents for the Impala from the Oregon and California Departments of Motor Vehicles. (Def. Statement at ¶ 37). Despite Plaintiff's representation that he purchased the Impala in 2007 from "Shayne Alterton," the documents indicated that Jimmy Ferrer of California acquired title on or about August 20, 2006 and that title was transferred to "Shayne Atterton" of Oregon on or about October 15, 2010. (Def. Statement at ¶ 37; Docket No. 37-29; Docket No. 37-30).

On October 27, 2016, PIIC served a second set of document requests on Plaintiff, seeking his bank statements[6] and documentation of the Impala's upgrades. (Docket No. 37-27). On December 1, 5, and 12, PIIC demanded that Plaintiff comply with its outstanding discovery requests. (Def. Statement at ¶ 36; Docket No. 37-28). Plaintiff's counsel called PIIC's counsel on December 21, 2016 to explain that the delay in providing his discovery response was due to the fact that he had to retain his own ethics counsel to assist him in deciding whether to continue to represent Plaintiff. (Def. Statement at ¶ 38; Pl. Counterstatement at ¶38). On January 13, 2017, Plaintiff served an "Amended Response to Disclosure Requests" and a "Response to Second Document Requests," which stated:

> 1. The plaintiff hereby discloses that the dates listed on the following documents previously provided by the plaintiff herein as part of his disclosure production are not accurate:
>     (a) bill of sale dated November 20, 2007;
>     (b) Invoice from Golden Customs, Inc., dated September 7, 2009 in the sum of $151,750;
>     (c) Invoice from Golden Customs, Inc., dated October 5, 2013 in the sum of $71,500; and

---

[6] Defendant contends that the Court ordered Plaintiff to produce his bank statements during a conference on September 14, 2016 and again during a telephone conference on November 2, 2016. (Def. Statement at ¶¶ 31, 35). Plaintiff disputes that the Court ordered production of bank statements on either date (Pl. Counterstatement at ¶¶ 31, 35). The Court has reviewed the record of the September 14 conference and its own notes pertaining to the November 2 call. The Court did not formally order production of Plaintiff's bank statements on either date. However, on November 2, the Court agreed with Defendant that the bill of sale did not conclusively prove Plaintiff's ownership and indicated that Defendant had a right to Plaintiff's relevant bank statements. Though the Court agrees that this fact may be relevant because it sheds light on Plaintiff's cooperation or lack thereof, it does not affect the Court's final decision. *See infra*, Section III at 11.

> (d) Plaintiff hereby further discloses that he is not currently aware of the actual dated [sic] of payments and the amounts paid to Golden Customs, Inc., and/or to Bennie Padilla for upgrades to the Insured Vehicle.
>
> 2. In order to correct any prior misleading statements, the plaintiff further states that:
>
>> (a) The plaintiff purchased the subject vehicle, to wit, the 1962 Chevrolet Impala, from Shayne Atterton on or about June 12, 2012 for the sum of $33,300 . . .

(Def. Statement at ¶ 39; Docket No. 37-32).

On March 1, 2017, PIIC moved for summary judgment seeking dismissal of Plaintiff's complaint in its entirety with prejudice. (Docket No. 36). Plaintiff filed an opposition to PIIC's motion and a cross-motion for summary judgment on March 31, 2017. (Docket No. 46). On April 19, 2017, PIIC filed a reply in further support of its motion for summary judgment and an opposition to Plaintiff's Cross-Motion. (Docket No. 42).

## II. SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, the moving party bears the burden of demonstrating that it is entitled to summary judgment. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). The Court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute as to a material fact "exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." *Beyer v. Cty. of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008); *see also Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247–48 (1986). A fact is material if it might affect the outcome of the suit under the governing law. *Casalino v. N.Y. State Catholic Health Plan, Inc.*, No. 09 Civ. 2583(LAP), 2012 WL 1079943, at *6 (S.D.N.Y. Mar. 30, 2012).

In reviewing a motion for summary judgment, the Court "must draw all reasonable inferences in favor of the [non-moving] party" and "must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150–51 (2000). That said, the Court may not weigh the evidence or determine the truth of the matter, but rather conducts "the threshold inquiry of determining whether there is the need for a trial[.]" *Anderson*, 477 U.S. at 250.

The moving party bears the initial burden of "demonstrating the absence of a genuine issue of material fact." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (citing *Celotex*, 477 U.S. at 323). If the moving party meets this initial burden, the burden then shifts to the non-moving party to "present evidence sufficient to satisfy every element of the claim." *Id.* "The non-moving party is required to 'go beyond the pleadings' and 'designate specific facts showing that there is a genuine issue for trial,'" *id.* (citing *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 249–50), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the non-moving party fails to establish the existence of an essential element of the case on which it bears the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23.

In the Southern District of New York, parties moving for and opposing summary judgment must also submit short and concise statements of facts, supported by evidence that would be admissible at trial. Local Civ. R. 56.1. The opposing party must specifically controvert the moving party's statement of material facts, or the moving party's facts will be deemed admitted for purposes of the motion. Local Civ. R. 56.1(c); *T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009) ("A nonmoving party's failure to respond to a Rule 56.1 statement

permits the court to conclude that the facts asserted in the statement are uncontested and admissible."). However, uncontested facts cannot be deemed true simply by virtue of their assertion in a Local Rule 56.1 statement; the Court is free to disregard the assertion in the absence of citations or where the cited materials do not support the factual assertions in the statements. *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001). The Court therefore has discretion "to conduct an assiduous review of the record even where one of the parties has failed to file such a statement." *Id.* (internal quotation marks omitted); *see also* Fed. R. Civ. P. 56(c)(3). Nevertheless, the Court is "not required to consider what the parties fail to point out." *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 292 (2d Cir. 2000).

## III. DISCUSSION

Defendant seeks to dismiss the complaint in its entirety on the grounds that Plaintiff's conduct violated the Fraud Provision and breached his duty to cooperate under the Policy. (Def. Br. at 5). Plaintiff argues that his misrepresentations were not material and therefore do not "rise to the level of fraud sufficient to void . . . coverage." (Pl. Opp. at 8). Plaintiff also asserts that he supplied all relevant requested information to PIIC throughout the investigation and thus has not breached the duty to cooperate. (*Id.*). Moreover, Plaintiff maintains that he is entitled to coverage under the Policy as there is no dispute of material fact with regard to his ownership of the vehicle, its subsequent theft, and the vehicle's coverage under the Policy. (*Id.* at 6–8). For the reasons that follow, the Court concludes that Plaintiff failed to cooperate with PIIC in its investigation, a condition precedent that is an "absolute defense to an insurance claim[.]"[7] *Blakeslee v. Royal Ins. Co. of Am.*, No. 93 Civ. 1633 (MBM), 1995 WL 122724, *7 (S.D.N.Y.

---

[7] The Court need not consider whether Plaintiff's conduct violated the Fraud Provision or whether Plaintiff's Cross-Motion has merit because Plaintiff's breach of the Cooperation Condition, by itself, is sufficient to bar recovery under the Policy.

-8-

Mar. 22, 1995); *Allstate Ins. Co. v. Longwell*, 735 F. Supp. 1187, 1193 (S.D.N.Y. 1990) ("[T]he failure of an insured to cooperate with the insurer is a breach of a significant condition precedent of the policy which bars the insured's recovery under the policy.").

"As this is a diversity action, this Court, sitting in New York, must apply New York law including New York's choice-of-law rules." *Allstate Ins. Co.*, 735 F. Supp. at 1192 (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941)). In determining which law applies to a contract dispute, New York utilizes the "center of gravity" approach to determine which forum has the most significant contacts with the matter in dispute. *Maryland Cas. Co. v. Cont'l Cas. Co.*, 332 F.3d 145, 151–52 (2d Cir. 2003). "For insurance contracts, the applicable law is typically that of the principal location of the insured risk." *Standard Gen. L.P. v. Travelers Indem. Co. of Connecticut*, 261 F. Supp. 3d 502, 506 (S.D.N.Y. 2017). If the policy covers risk in multiple states, however, then the insured's domicile is the "controlling factor" in determining the applicable law. *Id.* Here, the Policy applies to losses which occur throughout the United States, Puerto Rico, and Canada. (*See* Docket No. 37-6 at 17). Therefore, the Court concludes that New York law governs because Plaintiff is domiciled in New York. (Docket No. 37-10 at 1).

Under New York law, "[w]hen an insured deliberately fails to cooperate with its insurer in the investigation of a covered incident as required by the policy, the insurer may disclaim coverage[.]" *State Farm Indem. Co. v. Moore*, 872 N.Y.S.2d 82, 83 (1st Dep't 2009) (internal quotation marks omitted); *see also Hudson Tire Mart, Inc. v. Aetna Cas. & Sur. Co.*, 518 F.2d 671, 674 (2d Cir. 1975) ("The purpose of the Cooperation Clause is to enable the insurer to obtain all knowledge and facts concerning the cause of the . . . loss involved while the information is fresh in order to protect itself from fraudulent and false claims."); *Car & Gen. Ins. Corp. v. Goldstein*, 179 F. Supp. 888, 891 (S.D.N.Y. 1959) ("'[T]here shall be a fair and frank

disclosure of information reasonably demanded by the insurer to enable it to determine whether there is a genuine defense.'" (quoting *Coleman v. New Amsterdam Cas. Co.*, 247 N.Y. 271, 276 (1928))).

Nevertheless, "an insurance company bears a heavy burden in seeking to disclaim liability, because an innocent third party often will suffer." *New York City Hous. Auth. v. Hous. Auth. Risk Retention Grp., Inc.*, 203 F.3d 145, 151 (2d Cir. 2000). The New York Court of Appeals has held that to establish lack of cooperation, the insurer must prove: (1) it acted diligently in seeking to bring about the insured's cooperation; (2) its efforts were reasonably calculated to obtain the insured's cooperation; and (3) the attitude of the insured was one of "willful and avowed obstruction[.]" *Thrasher v. U.S. Liability Ins. Co.*, 278 N.Y.S.2d 793, 800 (1967) (internal quotation marks omitted); *Gov. Employees Ins. Co. v. Fletcher*, 48 N.Y.S.3d 173, 174 (2d Dep't 2017); *Dornoch Ltd. ex rel. Underwriting Members of Lloyd's Syndicate 1209 v. PBM Holdings, Inc.*, 666 F. Supp. 2d 366, 373 (S.D.N.Y. 2009). In addition, the Policy makes clear that in order to disclaim coverage, PIIC must have been prejudiced as a result of the insured's failure to cooperate.[8] (*See* Def. Br. at 11).

Here, PIIC's efforts were both diligent and reasonably calculated to bring about Plaintiff's cooperation. PIIC sent Plaintiff numerous letters regarding its obligations under the Policy and continued to follow up even after Plaintiff failed to respond.[9] *See Preferred Mut. Ins.*

---

[8] Ordinarily, New York law does not require the insurer to show prejudice as a result of the insured's lack of cooperation to establish its entitlement to summary judgment. *See, e.g., New York City Hous. Auth.*, 203 F.3d at 152 n. 6 ("Prejudice has never been required when an insured breaches a condition of the insurance contract."); *Nationwide Mut. Ins. Co. v. Graham*, 713 N.Y.S.2d 602, 603 (4th Dep't 2000); *Wingates, LLC v. Commonwealth Ins. Co. of Am.*, 21 F. Supp. 3d 206, 218 (E.D.N.Y. 2014). In the instant case, however, the Policy explicitly states, "We have no duty to provide coverage under this policy if the failure to comply with the [duty to cooperate] *is prejudicial to us*[.]" (Docket No. 37-6 at 16) (emphasis added).

[9] Less than two weeks after Plaintiff signed the Affidavit of Vehicle Theft, PIIC followed up by requesting documentation of the Impala's acquisition and upgrades. (Def. Statement at ¶ 15; Pl. Counterstatement at ¶ 15). After receiving a deficient response from Plaintiff, PIIC promptly sent Plaintiff a letter requesting that he comply with its initial document demands. (Def. Statement at ¶¶ 16–17; Pl. Counterstatement at ¶¶ 16–17). When Plaintiff

*Co. v. SAV Carpentry, Inc.*, 844 N.Y.S.2d 363, 364 (2d Dep't 2007) (citing the insurer's continued correspondence with the insured as evidence of its diligence); *see also West St. Properties, LLC v. American States Ins. Co.*, 53 N.Y.S.3d 674, 677 (2d Dep't 2017). Moreover, PIIC specifically informed Plaintiff that his failure to comply with its requests would be a material breach of the Policy. (Def. Statement at ¶ 17; Pl. Counterstatement at ¶ 17). As such, PIIC's actions satisfy the first two requirements under *Thrasher*.

With regard to whether Plaintiff's attitude was one of "willful and avowed obstruction," the Court finds that no reasonable jury could find otherwise. Plaintiff argues that he "fully cooperated" by responding "to all of the defendant's requests" and producing "all of the information in his possession, with the exception of his tax returns, which were properly objected to." (Pl. Opp. at 38). Plaintiff spends a great deal of time attempting to persuade the Court that he was not required to produce his tax returns or bank statements under the Policy's Cooperation Clause. (*Id.* at 23–37). Plaintiff also provides a list of explanations as to why certain documents were not produced. (*Id.* at 30–38). Those arguments are inconsequential, however, because Plaintiff breached the Cooperation Condition by providing PIIC with false documents – a "back-dated bill of sale" and invoices he "prepared" himself. (*Id.* at 8).

Courts in New York have consistently held that an insured's "failure to make fair and truthful disclosures in reporting [an] incident constitutes a breach of the cooperation clause of the insurance policy as a matter of law."[10] *Nationwide Mut. Ins. Co. v. Graham*, 713 N.Y.S.2d 602,

---

did not respond to its second request, PIIC followed up and again requested compliance with its demands. (Def. Statement at ¶ 18; Pl. Counterstatement at ¶ 18). Though Plaintiff objected to several of PIIC's requests, PIIC continued to diligently seek information it deemed relevant. (Def. Statement at ¶¶ 20–23; Pl. Counterstatement at ¶¶ 20–23). Significantly, PIIC sent three additional letters requesting compliance between October 15, 2014 and December 17, 2014. (*Id.*).

[10] "[W]here there is an issue of fact as to whether a plaintiff has failed to cooperate, summary judgment is properly denied." *SCW West LLC v. Westport Ins. Corp.*, 856 F. Supp. 2d 514, 523 (E.D.N.Y. 2012). Where an insured fails to cooperate with the insurer as a matter of law, however, summary judgment may be appropriate. *See id.*; *Fine Gold*

603 (4th Dep't 2000); *Peerless Ins. Co. v. Sears*, 312 N.Y.S.2d 347, 348 (4th Dep't 1970) ("The failure to make fair and truthful disclosures [is] a breach of the insurance contract as a matter of law."); *Car & General Ins. Corp.*, 179 F. Supp. at 891–92 ("The condition of cooperation imposed upon the insured is that he make a truthful statement of the cause of an accident."). Thus, Plaintiff was obligated under the Cooperation Condition "to provide the correct information" to PIIC in seeking coverage in connection with his loss. *See Federated Dept. Stores, Inc. v. Twin City Fire Ins. Co.*, 807 N.Y.S.2d 62, 66–67 (1st Dep't 2006).

Plaintiff disputes that he "produced fraudulent documents." (Pl. Counterstatement at ¶ 40). However, it is undisputed that Plaintiff submitted invoices purporting to be from Golden Customs that he "prepared" after the fact using "estimates." (Pl. Opp. at 8). As Plaintiff himself admits, "[t]here never was any paperwork" for the Impala's renovations. (Pl. Opp. at 8; Docket No. 47 at 4). Plaintiff concedes that he is not aware of the actual dates of payment or the amounts paid for the Impala's upgrades and readily acknowledges that he "back-dated" the bill of sale. (Def. Statement at ¶ 39; Docket No. 37-32; Docket No. 47 at 11). Moreover, during the January 19, 2017 status conference, Plaintiff's counsel specifically stated that the invoices were "made up." Transcript of Jan. 19, 2017 Status Conference at 10 ("Instead of saying honestly, 'I don't have the documentation,' he created a document. . . . He made them up."). Still, Plaintiff maintains that the documents are not fraudulent because the descriptions of the Impala's upgrades were accurate. (Pl. Opp. at 33) ("While the invoices themselves may not be genuine, they do detail who did the work and what Golden Customs did to improve the car.").

---

*Jewelry, Inc. v. Guaranty Nat. Ins. Co.*, No. 83 Civ. 8141 (MJL), 1986 WL 2198, at *4 (S.D.N.Y. Feb. 13, 1986) ("[B]reach of a cooperation clause in an insurance agreement can be properly determined in the summary judgment context."); *Lentini Bros. Moving & Storage Co., Inc., v. New York Prop. Ins. Underwriting Assoc.*, 53 N.Y.2d 835, 837 (1981) ("In view of the insured's unexcused and willful refusal to comply, there is no reason to deny summary judgment dismissing the complaint unconditionally[.]").

Plaintiff's argument fails. For purposes of the Cooperation Condition, it is irrelevant that some of the information on a falsified invoice may be accurate. Plaintiff implicitly represented to PIIC that the documents he submitted were bona fide, when in fact they were fabricated.[11] This cannot be classified as a "technical or unimportant" omission or defect. *See 525 Fulton St. Holding Corp. v. Mission Nat. Ins. Co.*, 610 F. Supp. 72, 74 (S.D.N.Y. 1985) (finding that a supplemental answer that contained incorrect policy numbers and omitted information could not be classified as "technical or unimportant omissions or defects"). Nor was this an "honest mistake." (Def. Reply at 18–19). Plaintiff repeatedly submitted the "made up" documents in an effort to recover under the Policy. (*See* Def. Br. at 10, 14). Indeed, Plaintiff seems to concede that he acted purposefully because PIIC "threatened not to pay the claim" unless Plaintiff submitted the documentation. (Pl. Opp. at 8; Docket No. 47 at 11 ("When I was faced with the insurance company threatening not to pay unless I produced documentary proof of the purchase and renovations to the car, I admit that I did something foolish.")). Plaintiff's actions clearly constitute "willful and fraudulent" conduct expressly undertaken to induce PIIC to pay Plaintiff's claim. *See 525 Fulton St. Holding Co.*, 610 F. Supp. at 74.

Plaintiff's contention that his misrepresentations were not material is simply wrong. In this context, "a subject relevant and germane to the insurer's investigation as it was then proceeding" is considered material. *Fine v. Bellefonte Underwriters Ins. Co.*, 725 F.2d 179, 183 (2d Cir. 1984) ("The law is clear that the materiality of false statements during an insurance company investigation is not to be judged by what the facts later turn out to have been...."); *Allstate Ins. Co.*, 735 F. Supp. at 1194 (applying the *Fine* standard to a cooperation clause issue).

---

[11] The "invoices" Plaintiff submitted were made to look as if they were truly prepared by Golden Customs, Inc. The invoices contain a box listing Golden Customs' address, an invoice number, pricing, and a computerized "PAID" stamp purporting to indicate the date of payment. (Docket No. 37-22 at 8–9).

Here, PIIC had reason to believe that Plaintiff's claim might be fraudulent. Plaintiff's claim that his Impala was stolen while parked in his locked garage is nearly identical to the claim he filed with PIIC in 2010 for the theft of his 1985 Pontiac Fiero. (Docket No. 37-4 at 17). As PIIC notes, "it is unusual enough for an individual living in a semi-rural area to have a vehicle stolen from home," and it "raises legitimate suspicion for the same individual to report another 'theft' under nearly identical circumstances." (Def. Reply and Opp. at 10). In addition, PIIC was aware that Plaintiff filed for bankruptcy in 2005 to discharge $32,077 of debt. (Docket No. 37-2 at 10; *see supra* n. 4). These facts raise legitimate questions about the authenticity of Plaintiff's claim.[12] Thus, Plaintiff's implicit representation that the bill of sale and invoices were genuine was particularly "relevant and germane" to PIIC's investigation of the alleged purchase, upgrade, and restoration of the Impala. *See Fine*, 725 F.2d at 183. "Where the circumstances of the claim may reasonably appear suspicious," as is the case here, producing fake documents "defeats the right of the insurer to obtain relevant information to enable it to decide upon its obligations under the policy and to protect against false claims." *Evans v. International Ins. Co.*, 562 N.Y.S.2d 692, 694 (1st Dep't 1990).

---

[12] Plaintiff incorrectly claims that the bill of sale and invoices were not relevant or material to PIIC's investigation under an "agreed-value" policy. (Pl. Opp. at 8, 20–22). An "agreed-value" policy, sometimes known as a "valued policy," is similar to "a stipulation for liquidated damages." *CPH Int'l, Inc., v. Phoenix Assurance Co. of New York*, No. 92 Civ. 2729 (SS)(NRB), 1994 WL 259810, at *9 (S.D.N.Y. June 9, 1994) (internal quotation marks omitted); *St. Paul Fire & Marine Ins. Co. v. Pure Oil Co.*, 58 F2.d 393, 395 (S.D.N.Y. 1932), *rev'd on other grounds*, 63 F.2d 771 (2d Cir. 1933) ("In a valued policy . . . the value of the subject matter is agreed upon beforehand at a specified sum."). Nevertheless, an "agreed-value" policy does not preclude investigation into the value of the insured property where there are legitimate suspicions of fraud, as is the case here. *See Quaker Hills, LLC v. Pacific Indem. Co.*, No. 10 Civ. 421(DAB), 2011 WL 4343368, at *4 n.5 (S.D.N.Y. Aug. 15, 2011); *Nichols v. Hartford Fire Ins. Co.*, 403 N.Y.S.2d 335, 337 (3d Dep't 1978) ("[T]he agreed upon value of the property is conclusive on the parties . . . . only where the bona fides of the transaction are not assailed and neither fraud nor mistake is charged[.]"). Moreover, the purpose of PIIC's request for the bill of sale and invoices was not merely to ascertain the value of the Impala; as PIIC explains, those documents "pertain[] to fraudulent overvaluation for the purpose of defrauding PIIC." (Def. Reply and Opp. at 17). To hold that an insurer is not entitled to investigate a suspicious claim simply because the property was insured under an "agreed-value" policy would undermine the policy's cooperation condition, which exists to protect the insurer from "fraudulent and false claims." *525 Fulton St. Holding Corp.*, 610 F. Supp. at 73.

For this reason, it is clear that PIIC was also prejudiced by Plaintiff's submissions. *See Metro. Cas. Ins. Co. v. Shaid*, No. 6755/08, 2009 WL 1657985, at *2 (Sup. Ct. June 12, 2009) ("An insured breaches the condition of cooperation and seriously prejudices the insurer in handling the claims and lawsuits arising out of the [incident] when making false statements concerning the facts[.]"). Plaintiff submitted false documents in response to PIIC's investigation with the sole purpose of inducing them to pay out on the claim. It's of no moment that Plaintiff was unsuccessful; his actions clearly prejudiced PIIC in that they interfered with PIIC's investigation of the claim.

It is too late for Plaintiff to cooperate at this juncture. "Because failure to perform a condition precedent is an absolute defense to an insurance claim, subsequent offers to comply are of no consequence." *Blakeslee*, 1995 WL 122724, at *7; *see also Rosenthal v. Prudential Prop. & Cas. Co.*, 928 F.2d 493, 495 (2d Cir. 1991) ("[A] finding of willfulness extinguishes any 'right' to a 'last opportunity.'").

In sum, the Court finds that Plaintiff's willful violation of the Cooperation Condition precludes recovery as a matter of law. Therefore, the portion of PIIC's motion seeking summary judgment on that ground is granted and the complaint is dismissed. Having dismissed the complaint, Plaintiff's Cross-Motion is denied.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is granted and Plaintiff's Cross-Motion is denied. The Clerk is respectfully requested to terminate the pending

motions, (Docket Nos. 36, 46), and close the case.

Dated: January 19, 2018
White Plains, New York

**SO ORDERED:**

_____
JUDITH C. McCARTHY
United States Magistrate Judge